IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| PIN/NIP, INC., | )<br>) |
| Plaintiff, | ) Civil Case No. 97-0307-S-BLW<br>) |
| v. | )<br>) |
| PLATTE CHEMICAL COMPANY, | ) MEMORANDUM DECISION<br>) AND ORDER |
| Defendant. | )<br>) |

## INTRODUCTION

The Court has before it six motions in limine filed by Pin/Nip. The Court heard oral argument and ruled from the bench on most issues raised by the motions. This decision constitutes the Court's written findings.

## ANALYSIS

### 1. Motion to Exclude License Agreements

The Court declined to rule on this motion until the damages portion of the case.

### 2. Motions Raising Inducement Issues

Three of the motions raise issues concerning inducement. Turning to the first issue, the Court will not require Platte to show inducement before it can put on its infringement proof. Certainly Platte must ultimately show that Pin/Nip induced the instances of infringement on which it seeks recovery. Under the language of Rule of Evidence 104(b), the relevancy of the infringement evidence is conditioned on the admission of evidence of inducement. In other

*Memorandum Decision & Order – page 1*

words, proof that applicators infringed is irrelevant unless that infringement was induced by Pin/Nip.

However, Rule of Evidence 104(b) does not mandate proceeding in any set order. In fact, the Rule contemplates admitting evidence subject to the condition that it be tied together with the evidence making it relevant later in the trial. Thus, I will permit Platte to begin with infringement proof subject to the condition that it be tied to inducement proof later in the trial. If the inducement evidence is not sufficient, Pin/Nip can raise that by motion when Platte rests, and I will resolve the issue at that time.

Second, the Court recognizes the holding of the Federal Circuit in *Tegal Corp. v. Tokyo Electron Company, Ltd.*, 248 F.3d 1376 (Fed. Cir. 2001) that inducement cannot be based on an omission because it requires the commission of an affirmative act. Here, it appears Platte will be proffering evidence of affirmative acts such as marketing, record-keeping, the lending of free equipment to induce applications, etc. Thus, I cannot hold now that Platte's inducement proof is insufficient. Once again, Pin/Nip may raise this ground again once Platte rests.

Third, I do not agree with Pin/Nip that the actions of a third party are irrelevant to the inducement issue unless Platte can show that the third party is an alter ego of Pin/Nip. It is true that in *Tegal*, the Federal Circuit held that a parent company could not, by omission, induce its subsidiary to commit infringement unless the parent was the alter ego of the subsidiary. That is the standard alter ego theory that governs the relationship between parents and subsidiaries, a relationship we do not have here. *Tegal* did not extend that theory to apply outside of the parent/subsidiary relationship. The case law supports a finding of inducement if Pin/Nip is knowingly facilitating the applicators' efforts to induce their customers to commit direct acts of

*Memorandum Decision & Order – page 2*

infringement. *See Hewlett-Packard Co. v. Bausch & Lomb, Inc*, 909 F.2d 1464, (Fed.Cir. 1990). There is no requirement that Platte must show that either the applicators or the customers are alter egos of Pin/Nip.

### 3. Informing the Second Jury About The First Trial

Pin/Nip asserts in its motions that the second jury should not be informed of the first jury's verdict. Pin/Nip later agreed, however, that the second jury could be informed that a prior decision had been made that the '912 patent is valid, and that the second jury is not to relitigate that issue.

Platte asserts that the second jury should be informed that the first jury had found that Pin/Nip had induced infringement up to June 1999. Platte intends to offer evidence at this second trial of infringing applications taking place before June of 1999. Those applications would, according to Platte, be covered by the prior jury's inducement finding so that Platte would not have to submit any new evidence of inducement for those infringing applications. Platte also intends to offer evidence of infringing applications taking place after June of 1999, and intends to offer evidence that Pin/Nip continued to induce infringement after June of 1999. In support of this proposal, Platte cites *Moleculon Research Corp. v. CBS, Inc.*, 793 F.2d 1261 (Fed.Cir. 1986).

The Court rejects Platte's proposal. The Court can find no support in *Moleculon* for Platte's argument. At most, *Moleculon* permits inducement to be shown by circumstantial evidence. The case does not, however, endorse Platte's proposal, which goes much further.

The Court will therefore not instruct the second jury that it must presume a pattern of inducement by Pin/Nip before June of 1999. The Special Verdict Form in the first trial cannot be

*Memorandum Decision & Order – page 3*

read to make such a broad finding. In this second trial, Platte must show that Pin/Nip induced the infringing applications, whether those applications occurred before or after June of 1999.

In addition, to avoid retrial of the issues raised in the first trial, Platte may not introduce evidence of the three applications at issue there, or the evidence of inducement that was tied to those three applications. Platte may, however, use evidence that was introduced at the first trial to the extent that it is also relevant to the issue of whether Pin/Nip induced the infringements at issue here. However, it is very difficult at this stage to rule on such evidence, and so the Court will reserve a specific ruling for trial.

Platte asserts that the second jury must at least be informed of the first jury's decision that Pin/Nip induced at least one infringing application. The Court disagrees. In this second trial, Platte must produce evidence of infringing applications not shown at the first trial, and must show that these applications were induced by Pin/Nip. If it exists at all, the relevance of the first jury's findings to these new issues is very attenuated, but its prejudice to Pin/Nip could be substantial in that the second jury could feel bound to follow the first. Thus, Rule 403 applies, and bars evidence in the second trial that the first jury found that Pin/Nip induced at least one of the three infringing applications at issue there.

Platte complains that this ruling will be difficult to maintain since so much evidence refers to the first jury's verdict. Some of that evidence, such as the Forsythe memo, can be redacted. Other matters, such as testimony at the second trial that is inconsistent with the first, can be explained to the second jury.

The Court finds no reason to hide the fact that the validity finding was made by a jury. The second jury will not be unduly influenced by that finding since the second jury is not making

*Memorandum Decision & Order – page 4*

any validity determinations. Telling the second jury that a prior jury verdict found the patent valid will help explain any incidents that come up in the second trial referring to an earlier verdict. Fewer redactions will need to be made, and incidents where cross-examination reveals testimony inconsistent with the first trial will be easier for the second jury to understand. For this reason, the Court will instruct the second jury that an earlier jury verdict found that the patent is valid.

## 5. Dr. Kleinkopf's Testimony

Several of Pin/Nip's motions challenge various aspects of Dr. Kleinkopf's testimony. The Court will turn first to the challenges to his Supplemental Report dated March 8, 2002. The Court has concerns with three paragraphs of that Supplemental Report summarized below:

   a. Paragraph 14: Dr. Kleinkopf testifies that based on his understanding of the commercial application industry and the Federal Insecticide, Fungicide and Rodenticide Act (FIFRA), "a licensed applicator would understand that it was appropriate to [apply DMN and CIPC to the same potato]."

   b. Paragraph 15: Dr. Kleinkopf testifies about the "standard business practice in the industry" is to keep records about application of chemicals, and that the applicators' failure to do so suggests that they were trying to "avoid payment of the royalty for the use of the '912 patented technology."

   c. Paragraph 19: Dr. Kleinkopf testifies that "more than John Forsythe's single memo in June 1999 would be necessary to reverse the practice promoted by

*Memorandum Decision & Order – page 5*

Pin/Nip of applying CIPC in conjunction with DMN."[1]

In all three of these paragraphs, Dr. Kleinkopf is testifying as an expert in the commercial application industry, and as an expert on FIFRA. Dr. Kleinkopf was found to be an expert on plant physiology in the first trial, and he has extensive experience doing laboratory research on the effects of CIPC and DMN on potato sprouting. This is not enough, however, to permit the testimony summarized in the three paragraphs above. For that testimony, Dr. Kleinkopf must be qualified as an expert in FIFRA and the commercial application industry. Until the Court hears evidence so qualifying Dr. Kleinkopf, the evidence summarized above will be excluded.

Pin/Nip complains that Dr. Kleinkopf will testify by category rather than showing each application. The Court cannot rule on this issue at this time. The Court will carefully monitor the evidence to determine whether it is sufficient. Certainly Platte can proceed to some degree with circumstantial evidence. However, when the inferences required to make the evidence relevant become too great, the evidence veers into speculation and is subject to exclusion. This decision must await trial.

## 6. Dr. Kleinkopf's Charts

The Court will turn next to Dr. Kleinkopf's charts. Attached to Dr. Kleinkopf's Supplemental Report are sixteen charts. Platte has stated that these charts are Rule 1006 summaries. Rule 1006 summaries are subject to the authentication requirements of Rule 901. *See* 31 Wright & Gold, *Federal Practice and Procedure*, at § 8043, p. 522. Counsel stated at oral argument that they are working on a stipulation on the authentication issues.

---

[1] Apart from the issue of whether Dr. Kleinkopf has expertise in the commercial application industry, the Court is concerned that his testimony concerning the applicator's motive for not maintaining records would not be proper expert testimony under Rule 702.

*Memorandum Decision & Order – page 6*

Rule 1006 summaries are also subject to exclusion if the underlying material is inadmissible hearsay. *Id.* at p. 527. The underlying material is clearly hearsay, but Platte intends to show that the underlying material comes within Rule 803(6)'s business record exception.

The Court will have to rule at trial on whether Platte has satisfied Rule 803(6). On one of the charts, however, Pin/Nip asserts that Platte will not be able to satisfy Rule 803(6). Specifically, Pin/Nip asserts that the underlying material for Chart 12, Mike Gummow's log books, cannot be found to be business records. Pin/Nip points out that Gummow testified in his deposition that he used the log book for his personal use. However, Gummow did not use the word "personal" to mean "non-business." In fact, he testified that he used the log book to keep track of the applications for himself; in other words, to keep track of his business. So the Court cannot agree that Gummow's testimony precludes the use of the business records exception by Platte.

Under Rule 1006, Platte was required to give the underlying material to Pin/Nip enough in advance of trial to give Pin/Nip a fair opportunity to analysis the material. Platte did give the underlying material to Pin/Nip in advance of trial, but Pin/Nip complained in its briefing that the material was not Bates-stamped. Platte has since provided Pin/Nip with the Bates-stamped documents, and this matter appears no longer to be an issue.

Pin/Nip complains that the best evidence of Chart 12 is the actual order forms that show the applications with more precision than the logs prepared by Gummow. This argument assumes the orders are more precise than the logs, an assumption the Court has no way of testing at this point. Pin/Nip has the orders, and is free to show the Court any discrepancies. Under Ninth Circuit case law, the Court must determine if the Rule 1006 summary "fairly represents"

*Memorandum Decision & Order – page 7*

the underlying documents. *See Davis & Cox v. Summa*, 751 F.2d 1507, 1516 (9th Cir. 1985). Chart 12 is offered as a summary of Gummow's logs, and there is no evidence that it fails to fairly represent the logs. If there are discrepancies between the logs and orders, Pin/Nip is free to point that out to the Court.

Pin/Nip also complains about Charts 4, 5 and 6, claiming that they summarize applications to potatoes in fresh packing sheds rather than applications to "stored" potatoes. Pin/Nip also has a separate motion in limine on this regarding applications to potatoes in train cars. At this point, the Court will permit Platte to proceed with this evidence, while reserving ruling. The Court has a number of concerns about this evidence. Because of these concerns, the Court will segregate the Special Verdict Form in such a way that the jury will be required to make separate findings on this issue, so that the matter can be resolved in post-trial motions.

## ORDER

In accordance with the Memorandum Decision set forth above,

NOW THEREFORE IT IS HEREBY ORDERED, that the motion in limine to exclude evidence of license agreements (docket no. 294) is hereby RESERVED, and that the other motions in limine (docket nos. 284, 287, 290, 292, 296) are hereby GRANTED IN PART AND DENIED IN PART as set forth above.

Dated this 15th day of April, 2002.

B. LYNN WINMILL
CHIEF UNITED STATES DISTRICT JUDGE

```
                                                                    P. 1
         * * *  COMMUNICATION RESULT REPORT ( APR.15.2002  10:26AM ) * * *
                                                        TTI    WINMILL
  FILE MODE      OPTION            ADDRESS (GROUP)      RESULT      PAGE
  ----------------------------------------------------------------------
  581  MEMORY TX                   918015319168          OK         P.  9/9
                                   913034074494          OK         P.  9/9
                                   93448479             OK         P.  9/9
                                   93438869             OK         P.  9/9


  REASON FOR ERROR
       E-1) HANG UP OR LINE FAIL              E-2) BUSY
       E-3) NO ANSWER                         E-4) NO FACSIMILE CONNECTION
```

# FACSIMILE TRANSMITTAL SHEET

# UNITED STATES DISTRICT COURT

U.S. Courthouse & Federal Building
550 W. Fort Street, MSC 040
Boise, Idaho 83724

Date: April 15, 2002
Number of pages including this cover sheet: 9

To:   Dixson Burton (fax 9-1-801-531-9168)
      Liz Jones( fax 9-1-303-407-4494)
      Mike Sasser (fax 9-344-8479)
      Steve Anderson (fax 9-343-8869)

Re:   *Pin Nip v. Platte* – attached is the Judge's written decision on the 6 motions in limine and concerning the instructions to the jury today. We have set a time for




wm

United States District Court
for the
District of Idaho
April 15, 2002


\* \* CLERK'S CERTIFICATE OF MAILING \* \*


Re:  1:97-cv-00307


I certify that a copy of the attached document was mailed or faxed to the following named persons:

    M Michael Sasser, Esq.   1-208-344-8479
    SASSER & INGLIS
    PO Box 16488
    Boise, ID   83715

    William S Britt, Esq.   1-801-531-9168
    TRASK BRITT & ROSSA
    PO Box 2550
    Salt Lake City, UT   84110

    Edgar R Cataxinos, Esq.   1-801-531-9168
    TRASK BRITT & ROSSA
    PO Box 2550
    Salt Lake City, UT   84110

    H Dickson Burton, Esq.   1-801-531-9168
    TRASK BRITT & ROSSA
    PO Box 2550
    Salt Lake City, UT   84110

    Elizabeth R Jones, Esq.
    MICHAEL L BEATTY & ASSOCIATES
    1401 Seventeenth St #1600
    Denver, CO   80201-8749

    Steven B Andersen, Esq.
    HOLLAND & HART
    PO Box 2527
    Boise, ID   83701

    James E Hartley, Esq.
    HOLLAND & HART
    PO Box 8749
    Denver, CO   80201-8749

    Scott S Evans, Esq.
    MICHAEL L BEATTY & ASSOC
    1401 Seventeenth St #1600
    Denver, CO   80202

    M Gabriel McFarland, Esq.

THE BEATTY LAW FIRM ●  ●
PO Box 2260
Denver, CO  80201-2260

✓ Chief Judge B. Lynn Winmill
___ Judge Edward J. Lodge
___ Chief Magistrate Judge Larry M. Boyle
___ Magistrate Judge Mikel H. Williams

Cameron S. Burke, Clerk

Date: __4-15-02__          BY: __/s/_____
                              (Deputy Clerk)