97-307-S-BLW

US COURTS
DISTRICT OF IDAHO

APR 2 5 2002

**Jury Instruction No. 1**

FILED
RECD
CAMERON S. BURKE
CLERK IDAHO

Members of the jury, now that you have heard all the evidence, it is my duty to instruct you on the law which applies to this case. You will have a copy of these instructions in the jury room for you to consult if you find it necessary.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. You must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath promising to do so at the beginning of the case.

In following my instructions, you must follow all of them and not single out some and ignore others; they are all equally important. You must not read into these instructions or into anything the court may have said or done any suggestion as to what verdict you should return--that is a matter entirely up to you.

## Jury Instruction No. 2

The evidence from which you are to decide what the facts are consists of:

1.   the sworn testimony of witnesses, on both direct and cross-
     examination, regardless of who called the witness;

2.   the exhibits which have been received into evidence; and

3.   any facts to which all the lawyers have agreed or stipulated.

Jury Instruction No. 3

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

1.      Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they have said in their opening statements, closing arguments, and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

2.      Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

3.      Testimony that has been excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered. In addition some testimony and exhibits have been received only for

a limited purpose; where I have given a limiting instruction, you must follow it.

4.    Anything you may have seen or heard when the court was not in session is not evidence.  You are to decide the case solely on the evidence received at the trial.

## Jury Instruction No. 4

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what the witness personally saw or heard or did.  Circumstantial evidence is proof of one or more facts from which you could find another fact.  You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence.  It is for you to decide how much weight to give to any evidence.

## Jury Instruction No. 5

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

1.    the opportunity and ability of the witness to see or hear or know the things testified to;

2.    the witness' memory;

3.    the witness' manner while testifying;

4.    the witness' interest in the outcome of the case and any bias or prejudice;

5.    whether other evidence contradicted the witness' testimony;

6.    the reasonableness of the witness' testimony in light of all the evidence; and

7.    any other factors that bear on believability.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify.

**Jury Instruction No. 6**

You have heard testimony from persons who, because of education or experience, are permitted to state opinions and the reasons for their opinions.

Opinion testimony should be judged just like any other testimony. You may accept it or reject it, and give it as much weight as you think it deserves, considering the witness' education and experience, the reasons given for the opinion, and all the other evidence in the case.

## Jury Instruction No. 7

Certain charts and summaries that have not been received in evidence have been shown to you in order to help explain or illustrate a witness's testimony or other evidence in the case.  They are not themselves evidence or proof of any facts.  If they do not correctly reflect the evidence in the case, you should disregard these charts and summaries and determine the facts from the underlying evidence.

## Jury Instruction No. 8

Certain charts and summaries have been received into evidence to illustrate information brought out in the trial. Charts and summaries are only as good as the underlying evidence that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves.

## Jury Instruction No. 8A

Platte contends that PIN/NIP has willfully induced the infringement of Claims 1 and 33 of the '912 patent.  PIN/NIP contends that it has not induced any applicator to infringe these claims.

The following instructions address these issues.

## Jury Instruction No. 9

Each party must prove such facts by the required weight of evidence known as the burden of proof.  Each party's burden of proof remains the same throughout the case.  This means that the burden never changes.

In human affairs, and even in scientific matters, absolute certainty of facts is seldom possible.  Thus, proof of facts to an absolute certainty is not required.  To protect the interests of the parties and to foster certain public policy goals, the law imposes different burdens in different types of cases.  In this case, some issues must be decided by a "preponderance of the evidence," and others must be decided by "clear and convincing evidence."  I will instruct you as to the standard by which you must weigh the evidence on each issue involved in this case.

### 1.  Preponderance of the Evidence

A preponderance of the evidence means such evidence which, when considered and compared with that opposed to it, has more convincing force and produces in your minds a belief that what is sought to be proved is *more likely true than not true.*  Put a slightly different way, a party's burden to establish or prove a claim by a preponderance of the evidence means proof which produces

in your minds the belief that the facts offered in support of the claims are more likely so than not so.

## 2. Clear and Convincing Evidence

Clear and convincing evidence involves a greater degree of persuasion than that which will satisfy a preponderance of the evidence standard. The evidence must be highly probable and free from serious doubt. For purposes of evaluating evidence where a party has the burden of proof by clear and convincing evidence, that evidence must produce in your minds a firm belief or conviction as to the matter sought to be established. You must be convinced that the fact which that party seeks to prove is indeed true in order to meet the clear and convincing burden.

Jury Instruction No. 10

Platte asserts that PIN/NIP has induced others to infringe Platte's patent.
Platte has the burden of proving infringement by a preponderance of the
evidence.

Before you decide whether or not PIN/NIP has induced the infringement of
the claims of Platte's patent, you will have to understand the patent "claims."
The patent claims are numbered paragraphs at the end of the patent, and begin at
column 6, line 5 of the patent, which is Exhibit 2301 in evidence. The patent
claims involved here are claims 1 and 33. The claims are "word pictures"
intended to define, in words, the boundaries of the invention described and
illustrated in the patent. Only the claims of the patent can be infringed. Each of
the claims 1 and 33 must be considered individually, and only one claim of a
patent must be infringed for the patent to be infringed. Thus, to prove patent
infringement, Platte need only establish by a preponderance of the evidence that
either claim 1 or claim 33 is infringed.

You have heard evidence about both Platte's commercial activities and
PIN/NIP's commercial activities. However, in deciding the issue of infringement
you may not compare PIN/NIP's accused activities to Platte's commercial
activities. Rather, you must compare PIN/NIP's accused activities and the

activities that they have been accused of inducing with claims 1 and 33 of Platte's patent. This is the only comparison that is relevant when making your decision regarding infringement.

In this trial, you have heard the term "preferred embodiment" and I gave you a definition of that term at one point. As you recall, the term refers to the requirement in patent law that an applicant for a patent publically disclose a preferred embodiment of the invention in exchange for patent protection. This requirement relates to the validity of the patent, which is not an issue before you. In this case, the applicator's method and the composition on the treated potato should be compared to the inventions described in claim 33 and claim 1, not to Platte's preferred embodiment of the claimed invention.

## Jury Instruction No. 11

To decide the question of infringement, you must first understand what the claims of the patent cover, that is, what they prevent anyone else from doing.

After considering the arguments of the parties and testimony from their experts, during a separate hearing which the Court conducted before this trial began, I ruled that certain words and groups of words from the patent claims have meanings which I will now explain to you.  You must use these meanings in your deliberations concerning infringement.

Claim 1. Claim 1 provides:  "A composition adapted for inhibiting sprout formation in tubers during storage, comprising CIPC (chlorpropham) and a substituted naphthalene [1,4Sight or DMN]."

I have interpreted claim 1 to cover "a composition of CIPC and a substituted naphthalene physically applied to a tuber so that the two chemicals in the composition work together at some point to inhibit sprouting."

I have defined the term "composition" as follows: "[A] composition is formed when two components are arranged, ordered or put together, without ever being physically mixed together."

I have concluded that, with respect to a potato that had chemicals applied to it, "a composition is created by — among other possibilities — a spaced sequential application of CIPC and a substituted naphthalene when these two chemicals work together to inhibit sprouting." Therefore, Claim 1 covers a composition on the potato that would result from such sequential application.

Claim 33:  Claim 33 provides:  "A method of inhibiting sprout formation on tubers during storage, comprising the steps of:

applying CIPC to the tubers in an amount effective to form a residue thereon and inhibit sprouting therefrom;

applying a substituted naphthalene [1,4Sight or DMN] to the tubers in an amount effective to form a residue thereon and inhibit sprouting therefrom; and

storing the tubers for a period of time, wherein the CIPC and substituted naphthalene [1,4Sight or DMN] residues are both present for at least a portion of the period of time the tubers are stored."

I have interpreted claim 33 to include a sequential application of CIPC and a substituted naphthalene to stored tubers so that at some time both the CIPC and substituted naphthalene are working together to inhibit sprouting. This is true even if there is a substantial amount of time between the applications of the two chemicals.

While I have interpreted portions of these claims as set forth above, each of the elements of Claims 1 and 33 is material and cannot be ignored when you analyze the infringement issues in this case.

You have also heard mention of an earlier trial in which the patent was determined to be valid and properly issued to Platte. Because the validity issue has been determined, it is not an issue for you to resolve. You must assume that the patent is valid and properly issued to Platte.

The question of whether the unexpected superior results – in other words, synergistic results – were achieved by the application embodied in the '912 patent has already been determined in the earlier trial which determined the validity of the patent. Of course, it is for the jury to determine in this proceeding whether the unexpected result was obtained in the applications of CIPC and DMN at issue in this proceeding.

You have heard testimony which referred to the prior trial. However, that trial related to issues which you are not deciding here. Therefore, except as I have otherwise instructed you, the jury should not consider any references to the earlier trial and the decisions reached there, in deciding the issues presented to you in this proceeding.

Jury Instruction No. 12

I will now instruct you as to the rules you are to follow in arriving at your decisions as to whether PIN/NIP has induced others to infringe any of claim 1 or claim 33 of Platte's patent. That decision will be set forth in your answers to the Special Interrogatories of the Verdict Form.

The patent law gives the owner of a valid patent the right to exclude others from making, using, offering for sale, or selling the patented invention, or practicing the patented method, during the term of the patent. The patent law provides that any person or business entity which, without the patent owner's permission, makes, uses, offers for sale, or sells within the United States any product or method that is covered by at least one claim of a patent before the patent expires, infringes the patent.

There are two ways to infringe a patent. One can: (1) directly infringe a patent; or (2) induce others to infringe a patent. I will now explain in more detail each type of infringement alleged in this case.   Here, Platte alleges that PIN/NIP is inducing the infringement of one or more claims of Platte's patent.

Jury Instruction No. 13

In this case, Platte asserts that PIN/NIP has induced others to directly infringe the patent. PIN/NIP would be liable for inducing others to directly infringe Platte's patent if you find that Platte has proven by a preponderance of the evidence that PIN/NIP has induced others, referred to during the trial as applicators, to make, use, sell or offer for sale, the invention defined in at least one claim of Platte's patent.

However, a preliminary question you must answer, as set forth in the Special Interrogatories, is whether any applicators infringed Platte's patent. In this regard, you are instructed that a company (or an individual) can directly infringe a patent without knowing that what it is doing is an infringement of the patent. It may also directly infringe even though in good faith it believes that what it is doing is not an infringement of any patent.

To determine direct infringement, you must compare the accused product or method with each claim that Platte asserts is infringed, using my instructions as to the meaning of the patent claims.

A patent claim is infringed only if an applicator's method includes, or results in, each and every element of the corresponding patent claim. For

example, if the applicator's method does not contain one or more method steps recited in claim 33, as interpreted by the Court, the applicator does not directly infringe that claim.  If chemicals applied to a potato do not create a composition that includes each of the elements recited in claim 1, as interpreted by the Court, the applicator does not directly infringe that claim.

You must determine direct infringement with respect to each patent claim individually.

You should compare the applicator's accused method with claim 33. You should compare the composition on the treated potato, if any, resulting from the application with claim 1.

Jury Instruction No. 14

Platte asserts that PIN/NIP has induced direct infringement by the applicators. In answering the Special Interrogatories, you are instructed as follows:

To show inducement, Platte must prove by a preponderance of the evidence that an applicator has directly infringed the patent.  If there is no direct infringement by the applicators, PIN/NIP has not induced infringement.

If you find that an applicator has directly infringed the '912 patent, it is not necessary to show that PIN/NIP itself has directly infringed, if Platte proves by a preponderance of the evidence that PIN/NIP actively and knowingly aided and abetted the direct infringement by the applicators.  Platte must show that PIN/NIP actually intended to cause the acts that constitute direct infringement, and that PIN/NIP knew or should have known that its actions would induce actual infringement.  PIN/NIP cannot be liable for inducing infringement if it had no reason to be aware of the existence of the patent.

If you find that an applicator has directly infringed Platte's patent and that PIN/NIP knew or should have known that its actions would induce direct

infringement, you may find that PIN/NIP induced another to infringe Platte's

patent if either:

    1.    PIN/NIP provided instructions and directions to applicators to

        perform the infringing acts through labels, advertising, or

        other sales methods; or

    2.    PIN/NIP provided ingredients with the knowledge and intent

        that its customer would directly infringe by using the

        ingredients in a way that would infringe the patent.

**Jury Instruction No. 15**

I will now instruct you as to the rules you are to follow in answering those Special Interrogatories that ask you to determine if PIN/NIP has acted willfully in inducing infringement of the '912 patent.

Where a potential infringer has actual notice of another's patent rights, he has an affirmative duty of due care not to infringe the patent. Thus if you find by a preponderance of the evidence that PIN/NIP induced the infringement of Platte's patent, then you must further determine if PIN/NIP's inducement was willful. Willfulness must be proven by clear and convincing evidence showing that:

A. PIN/NIP had actual knowledge of Platte's patent, and

B. PIN/NIP had no reasonable basis for believing (1) that the process used by the applicators did not infringe Platte's patent or (2) that Platte's patent was invalid.

In making the determination as to willfulness, you must consider the totality of the circumstances. The totality of the circumstances includes a number of factors, which include, but are not limited to whether PIN/NIP exercised due

care to avoid infringing the patent, and whether PIN/NIP relied on competent legal advice.

Jury Instruction No. 16

To summarize the infringement allegations, Platte submitted six charts, exhibits 2401, 2403, 2405, 2407, 2409, and 2411. Platte alleges that for each application listed on the six charts, (1) the application infringed either Claim 1 or Claim 33; (2) the infringement was induced by Pin/Nip; and (3) Pin/Nip acted willfully in inducing the infringement.

You must examine each of these allegations for each application on these six charts. To help you, I have prepared questions that take you through each application on the six charts. These questions are called "Special Interrogatories" and relate to each chart submitted by Platte.

Mr. Metcalf will now hand out the Special Interrogatories to you. The front page contains a statement that you have examined all the attached Special Interrogatory questions and reached a unanimous resolution of the questions presented there. In other words, this is the sheet you will fill out when you are done.

Let's turn to the next page, that is titled at the top "Special Interrogatores for Chart One (Exhibit 2401)." You can see that these questions are put in a chart form, that relate directly to the exhibit 2401. The first two columns are

labeled "Customer" and "Storage Location." These entries are taken directly from Chart One, Exhibit 2401. The chart then asks four questions.

First, you are asked to determine if the specific application infringes Claim 1 or Claim 33. If you answered both of these questions "No," you will skip the questions in the next two columns and proceed to the next application. If you answer either or both of them "Yes", you will proceed to the next column.

The third column asks if that infringement was induced by Pin/Nip. If you answer "No", you will skip the question in the fourth and final column and proceed to the next application. If, however, you find inducement, you then proceed to the final column, which asks if the inducement was willful.

You must consider all of the applications listed on these charts. When you have reached unanimous agreement as to each application, you will have your foreperson fill in, date, and sign the front page of the Special Interrogatories form. You will then return with your verdict to the courtroom.

We will now hear the closing arguments of counsel after which I will give you a few brief closing instructions.